THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALONZO ROBERTSON *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 80-1054

Opinion filed January 21, 1981.

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Gordon A. Greenberg, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendants, Alonzo Robertson and Ronald Smith, were charged with

robbery. A jury found them both guilty of that charge. The court sentenced Robertson to a term of three years while Smith was granted probation. On appeal defendants contend that they were denied a fair trial because certain comments of the judge coerced the jury into a verdict and because of certain prejudicial remarks by the prosecutor during closing argument.

On May 20, 1978, at about 5 a.m., the alleged victim of a robbery invited a prostitute to his automobile which was parked in a lot at 3525 North Halsted Street in Chicago. As the pair sat in the automobile, two men approached and announced a holdup. One man, identified by the victim as Robertson, pulled the prostitute out of the vehicle and pointed to her pockets. The victim testified that when he emerged from the automobile Smith frisked him. The victim dropped his keys and a small amount of money on the ground. At that time, the victim observed the prostitute walk away from the scene. When the victim realized that the robbers did not have weapons, he asked Smith for the keys. Smith threw the keys away, and the victim began chasing the robbers.

Officer LeRoy Seabury of the Chicago Police Department testified that he was driving a squad car and observed two men being chased by one man. Another squad car halted the two men and the man chasing them came up and reported to the police that he had just been robbed by the two men.

Defendant Smith testified that he, Robertson, and a man named Murphy had been at a party in Evanston. Murphy dropped off the defendants, who lived on the south side, near Belmont Avenue. After purchasing liquor, defendants walked away from one prostitute who approached them. Moments later, in front of a parking lot, defendants swore at another prostitute because of a suggestion she made. Defendants then saw a man walking towards them. Believing him to be a friend of the prostitute, defendants became frightened and ran. After defendants flagged down a squad car, the man ran up and told the police defendants tried to rob him.

Defendants initially contend that the trial court coerced the jury into a verdict. After it had been deliberating for some time, the jury sent a note to the trial court stating it was unable to reach a unanimous verdict. The note indicated that the jury was split 10 to 2, without indicating which way the vote was split. At that time, over defense counsel's objection, the trial court summoned the jury to the courtroom and delivered the deadlock instruction authorized by the supreme court in *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731. The trial court stated as follows:

> "Ladies and gentlemen, this is an additional instruction that I'm going to give you very carefully, handwritten, and then I will send it back to the jury room with you.

Your verdict must represent the considered judgment of each juror. In order to return a verdict it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgments. Each of you must decide the case for yourselves, but do so only after an impartial consideration of all the evidence with your fellow jurors.

In the course of your deliberations do not hesitate to re-examine your own view and to change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of your fellow jurors or for the mere purpose of returning a verdict.

You are not parties, you are judges, judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

After giving the foregoing instruction, the trial court made the following additional comments to the jury:

"There is no reason at all why this jury cannot arrive at verdicts in this case. I repeat, I don't care what your verdict is, but *you can't be deadlocked*. You heard one day of evidence and it is a question of you either believe one side or you believe the other. *You can't be deadlocked.* Now, Mr. Munoz, take your jury back to the jury room and deliberate, please." (Emphasis added.)

Defense counsel's motion for a mistrial based on the additional comments of the trial court was denied.

At the hearing on defendants' motion for a new trial, defense counsel, in urging the coercive effect of the court's additional comments to the jury after the giving of the *Prim* instruction, pointed out that the jury returned its verdicts within 30 minutes after the court's remarks. Defense counsel also complained that the trial court gave the *Prim* instruction in a normal conversational tone, but then gave the supplemental comments in a rising crescendo, ending in a scream.

In *Prim* our supreme court framed an instruction for trial courts to give to deadlocked juries in appropriate circumstances. The instruction was designed to avoid the coercion inherent in the traditional "heed the majority" charge. (*Allen v. United States* (1896), 164 U.S. 492, 41 L. Ed. 528.) The *Allen* charge had the effect of urging those members of jury who were in the minority to reevaluate their position. It became known as the "dynamite charge." The trial court's additional comments in the present case after the giving of the appropriate *Prim* instruction had the same coercive and prejudicial effect as that of the much maligned *Allen* charge. In ordering the jury to reach a verdict, the trial court nullified the

benefit the jury received from the *Prim* instruction. While the note from the jury to the court did not disclose how the 10-2 split in the jury was aligned, the fact that the jury returned verdicts within minutes after the court inaccurately stated, "you can't be deadlocked" indicates that a minority of two was coerced into joining the majority. Such language by the trial court could only have the effect of unduly pressuring those in the minority on the jury to "heed the majority" for the mere purpose of returning a verdict. (See *People v. Pankey* (1978), 58 Ill. App. 3d 924, 374 N.E.2d 1114.) In *Jenkins v. United States* (1965), 380 U.S. 445, 446, 18 L. Ed. 2d 957, 958, 85 S. Ct. 1059, 1060, the Supreme Court held that comments by the trial court were coercive and warranted a new trial where the trial judge told the jury, "You have got to reach a decision in this case." (Also see *United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232.) Similarly, we believe that this case must be remanded for a new trial because of the court's additional comments in which it ordered the jury to reach a verdict. Moreover, in view of the fact that the issue concerns the coercive effect of the comments on the jury and its impartiality, we do not believe the doctrine of harmless error is applicable to the present matter. See *People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.

In view of our holding, it is unnecessary to consider defendants' contention that the prosecutor's comments during closing argument deprived them of a fair trial.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Reversed and remanded.

RIZZI, P. J., and McGILLICUDDY, J., concur.