

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-7-2008

# USA v. Richards

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2536

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Richards" (2008). *2008 Decisions.* Paper 893.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/893

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2536

UNITED STATES OF AMERICA

v.

JERRY L. RICHARDS
a/k/a Junior

Jerry L. Richards,

Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Criminal No. 1:06-CR-319)
District Judge: The Honorable Christopher C. Connor

Submitted Under Third Circuit LAR 34.1(a)
May 12, 2008

Before: McKEE and ROTH, Circuit Judges
O'NEILL*, District Judge

(Filed : July 7, 2008)

---

*Honorable Thomas N. O'Neill, Jr., United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

---

OPINION OF THE COURT

---

O'NEILL, <u>District Judge</u>

Appellant Jerry L. Richards appeals the District Court's use of a preponderance-of-the-evidence standard to determine drug quantity at sentencing and the District Court's refusal to grant a mistrial and inquiry to the jury regarding whether there was a minimum quantity of drugs upon which it could reach a unanimous verdict. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). For the reasons stated below, we will affirm the judgment of the District Court.

**I.**

Because we write only for the parties, our factual summary is brief. On September 20, 2006, a grand jury returned a two-count indictment against appellant Richards, charging him with conspiracy to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. § 846 (Count I) and possession with intent to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count II). Defendant pleaded not guilty, had counsel appointed, and went to trial in the United States District Court for the Middle District of Pennsylvania on January 4, 2007. At the conclusion of the government's case-in-chief, the District Court granted appellant's motion for judgment of acquittal with respect to Count I.

2

After receiving the District Court's instructions, the jury retired to deliberate at 3:31 p.m. on Friday, January 5, 2007.  At 4:40 p.m. on January 5, the jury returned with a question regarding where certain evidence had been found.  The Court, with no objection from either party, advised the jury that its recollection would govern.

At 7:52 p.m. on January 5, the jury returned with the question, "Must the jury reach unanimity on the interrogatory?"  The interrogatory asked the jury, in the event that it found appellant guilty of the substantive offense, to find beyond a reasonable doubt that he was responsible for fewer than five grams, more than five but fewer than fifty grams, or more than fifty grams of crack cocaine.  The Court, with no objection from either party, responded, "Yes."  The jury continued to deliberate until 9:00 p.m. on January 5, at which point the Court recessed.

Jury deliberations continued at 9:20 a.m. on Monday, January 8, 2007.  At 12:13 p.m. on January 8, the jury returned with the questions, "What is the result of a unanimous verdict, but not unanimous determination on the interrogatory?  Is the result a mistrial or a hung jury?"  The District Court responded by providing the jury with a modified Allen[1]  charge:

> I'd like you to go back into the jury room and talk some more about the evidence, and remember my entire instructions that your job is to be the finders of the facts, that you should consider the evidence, you should consider my instructions on the law, and that you should render a verdict based on the evidence, and that should be your guide, what the evidence is

[1]Allen v. United States, 164 U.S. 492 (1896).

3

in this case and what the instructions were on the law.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.

Remember also that the government has to prove its case beyond a reasonable doubt, and if they do not do this, then you must return a verdict of not guilty. If they have done this, then you must return a verdict of guilty. So I ask you all to remember my instructions on what is reasonable doubt and all the other instructions that I gave you and remember that you oath as jurors is to decide the case on the evidence in the courtroom and the instructions of the law, and to render a verdict, if you possibly can, on the charge.

If you cannot reach a unanimous verdict on the matters before you, you should notify the court that you are hopelessly deadlocked, and then the case will have to be retried in front of another jury. So I ask that you please go back into the jury room, continue to review the evidence before you, and continue to deliberate.

At 3:30 p.m. on January 8, the jury returned with the statement, "Judge Connor, we are deadlocked on the interrogatory." Over defense counsel's objection, the Court asked the jury "to return to the jury room to determine whether there is a minimum quantity of drugs upon which you can unanimously agree beyond a reasonable doubt." The Court further advised the jury, "If you are unable to do so, please respond that you are hopelessly deadlocked and we will address that situation."

Defense counsel's objection was based on his belief that "in light of the fact that

4

the jury has now been deliberating for longer than it took us to introduce the evidence in this case, and in light of the fact that we have already given the jury a modified Allen charge . . . what the court is proposing would be unduly coercive." Defense counsel continued, "I would ask that the court take on face value the fact that the jury is deadlocked and dismiss the jury." The Court responded to counsel's objection by stating that it would proceed by asking the jury to return to the jury room to determine whether there is a minimum quantity of drugs upon which the jury could unanimously agree beyond a reasonable doubt, though the Court noted, "[I]t may very well be that the jury determines that they are unable to agree unanimously on a minimum quantity of drugs, in which event it would be my strong inclination to declare a mistrial."

At 4:21 p.m. on January 8, the jury returned a verdict. The jury found appellant guilty of Count II and returned a special verdict finding beyond a reasonable doubt that appellant distributed or possessed with intent to distribute at least five but fewer than fifty grams of crack cocaine. The Court polled the jury at appellant's request, and each of the twelve jurors responded that he/she agreed with the verdict.

The United States Probation and Parole Office prepared a presentence report in May 2007. The presentence report determined, "Based on witness testimony, the defendant is conservatively accountable for 519.78 grams of crack cocaine." Appellant objected to the report's determination regarding drug quantity, arguing that the jury's verdict at trial – which found him responsible for between five and fifty grams of crack

cocaine – should govern the drug quantity determination.

The District Court held a sentencing hearing on May 15, 2007 and, using a preponderance-of-the-evidence standard, found that appellant possessed with an intent to distribute 108.28 grams of crack cocaine. Because the drug quantity determination resulted in an offense level of 32 and appellant's criminal history category was I, the guideline imprisonment range was 121 to 151 months incarceration. The District Court granted a downward variance and imposed a sentence of 100 months incarceration followed by four years supervised release. The Court also ordered appellant to pay: a fine of $1,000.00; $1,000.00 in community restitution; and a $100.00 special assessment.

Judgment was entered in the District Court on May 16, 2007. Appellant filed a timely notice of appeal on May 21, 2007. Appellant raises two issues on appeal: (1) whether the District Court's committed reversible error by determining the drug quantity for guideline sentencing under a preponderance of the evidence standard; and (2) whether the District Court abused its discretion by denying appellant's motion for mistrial and directing the jury to deliberate further on the issue of the quantity of drugs appellant was responsible for distributing and possessing with intent to distribute.

## II.

After <u>United States v. Booker</u>, 543 U.S. 220 (2005), we "continue to review factual findings relevant to the Guidelines for clear error and to exercise plenary review over a district court's interpretation of the Guidelines." <u>United States v. Grier</u>, 475 F.3d

556, 570 (3d Cir.) (en banc), <u>cert. denied</u>, --- U.S. ----, 128 S.Ct. 106, 169 L.Ed.2d 77 (2007). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>Id.</u> (citations and internal marks omitted).

We review the District Court's decision to read a supplemental jury instruction for an abuse of discretion. <u>United States v. Jackson</u>, 443 F.3d 293, 297 (3d Cir. 2006), <u>citing</u> <u>United States v. Zehrbach</u>, 47 F.3d 1252, 1264 (3d Cir. 1995). Under the abuse of discretion standard, appellant must show that the District Court's action was "arbitrary, fanciful or clearly unreasonable." <u>Id.</u>, <u>citing</u> <u>Stich v. United States</u>, 730 F.2d 115, 118 (3d Cir. 1984). We must review the supplemental instruction given not "'in artificial isolation, but . . . in the context of the overall charge.'" <u>Id.</u>, <u>quoting</u> <u>United States v. Brennan</u>, 326 F.3d 176, 192 (3d Cir. 2003). We also review a District Court's denial of a mistrial for abuse of discretion. <u>See</u> <u>United States v. Hakim</u>, 344 F.3d 324, 328 (3d Cir. 2003).

## III.

In <u>United States v. Grier</u>, 475 F.3d 556, 561 (3d Cir. 2007) (en banc), this Court addressed "whether the Due Process Clause requires facts relevant to enhancements under the United States Sentencing Guidelines, particularly those that constitute a 'separate offense' under governing law, to be proved beyond a reasonable doubt." We concluded

7

"Once a jury has found a defendant guilty of each element of an offense[2] beyond a reasonable doubt, he has been constitutionally deprived of his liberty and may be sentenced up to the maximum sentence authorized under the United States Code without additional findings beyond a reasonable doubt." Id. Accordingly, "[j]udicial factfinding in the course of selecting a sentence within the permissible range does not offend the Fifth and Sixth Amendment rights to a jury trial and proof beyond a reasonable doubt." Id. "[T]he appropriate burden for finding sentencing facts here is by a preponderance of the evidence." United States v. Ali, 508 F.3d 136, 145 (3d Cir. 2007), citing Grier, 475 F.3d at 561.

Appellant contends that the Due Process Clause of the Fifth Amendment and the Sixth Amendment guarantee to trial by an impartial jury in criminal cases required the District Court's finding at sentencing that appellant was responsible for 108.28 grams of crack cocaine – which resulted in an increase in the recommended Guidelines imprisonment range from 78-97 months to 121-151 months – to be proved to a jury with evidence beyond a reasonable doubt. However, as we stated in Grier:

> By excising the provisions of the United States Code requiring mandatory application of the United States Sentencing Guidelines, the Supreme Court in [United States v. Booker, 543 U.S. 220 (2005)] altered the constitutional

---

[2]"[A]ny conduct that exposes an individual to punishment or increases the maximum punishment to which he or she is otherwise exposed must be deemed a crime. The predicate facts of such conduct constitute the 'elements' of the 'crime.' It is to these facts, and to these facts alone, that the rights to a jury trial and proof beyond a reasonable doubt attach." Grier, 475 F.3d at 562, citing Apprendi v. New Jersey, 530 U.S. 466, 484 (2000) (citations omitted).

impact of the Guidelines. None of the facts relevant to enhancements or departures under the Guidelines can increase the maximum punishment to which the defendant is exposed. The Due Process Clause thus affords no right to have these facts proved beyond a reasonable doubt.

Grier, 475 F.3d at 565-66 (affirming the District Court's decision to apply the preponderance standard to all facts relevant to the Guidelines and stating that "[t]here can be no question, in light of the holding of Booker and the reasoning of Apprendi, that the right to proof beyond a reasonable doubt does not apply to facts relevant to enhancements under an advisory Guidelines regime"). Because after Booker the Guidelines merely are advisory, "[t]he maximum legislatively authorized punishment to which the defendant is exposed is no longer the maximum prescribed by the Guidelines; instead, it is the maximum prescribed by the United States Code. Therefore, findings of fact relevant to the Guidelines need not be submitted to a jury."[3] Grier, 475 F.3d at 564.

At sentencing the District Court reviewed the drug quantity testimony presented at trial and, using a preponderance-of-the-evidence standard, concluded that appellant was responsible for 108.28 grams of crack cocaine. In considering the evidence, the District

[3]Appellant cites Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856 (2007) for the proposition that "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." However, because the Supreme Court in Cunningham considered a Sixth Amendment challenge to a mandatory sentencing regime, the Court's analysis does not conflict with our conclusion in this case, where we consider appellant's constitutional arguments in the context of an advisory sentencing scheme. Indeed the Court in Cunningham recognized that in Booker a unanimous Court agreed that "'merely advisory provisions,' recommending but not requiring 'the selection of particular sentences in response to differing sets of facts . . . would not implicate the Sixth Amendment.'" Cunningham, 127 S.Ct. at 870, quoting Booker, 543 U.S. at 233.

Court credited the testimony of the Government witnesses but refused to calculate the drug quantity in accordance with the presentence report – which concluded that appellant was accountable for 519.78 grams – because it found certain testimony "to be so imprecise that it is insufficient to meet the preponderance of the evidence standard." After departing downward from the recommended Guidelines range for such an amount – 121 to 151 months – the District Court imposed a sentence of 100 months incarceration.

We conclude that the District Court did not violate the Due Process Clause of the Fifth Amendment and the Sixth Amendment guarantee to trial by an impartial jury by using a preponderance-of-the-evidence standard to determine the drug quantity for sentencing. As the statutory maximum to which appellant was exposed is no longer the maximum prescribed by the Guidelines but the maximum prescribed by the United States Code, the District Court was not required to submit to a jury this finding of fact relevant to the Guidelines to impose its sentence.

Appellant attempts to distinguish Grier by arguing that in this case the District Court imposed a sentence enhancement based largely on acquitted conduct, while the District Court in Grier imposed a sentence enhancement for an uncharged offence after defendant pled guilty. See Grier, 475 F.3d at 559-60. However, as the United States Supreme Court held in United States v. Watts:

> [A]n acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof. The Guidelines state that it is "appropriate" that facts relevant to sentencing be proved by a preponderance of the evidence,

and we have held that application of the preponderance standard at sentencing generally satisfies due process. . . . We therefore hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.

519 U.S. 148, 156 (1997) (citations omitted).

Appellant acknowledges in his brief that Watts is still good law "until it is expressly overruled by the Supreme Court." Therefore, by appellant's admission even if we were to consider that the jury's unanimous special verdict regarding a minimum quantity of drugs constituted an acquittal of possession with intent to distribute any greater drug quantity, the District Court was not prevented from considering facts underlying the acquitted charge as long as the Court determined that those facts were proved by a preponderance of the evidence.

**IV.**

Supplemental jury charges should not be used to "blast a hung jury into verdict." United States v. Burley, 460 F.2d 998, 999 (3d Cir. 1972), quoting United States v. Fioravanti, 412 F.2d 407, 419 (3d Cir. 1969). "[I]t is a cardinal principle of the law that a trial judge may not coerce a jury to the extent of demanding that they return a verdict." Fioravanti, 412 F.2d at 416; see United States v. Boone, 458 F.3d 321, 326 (3d Cir. 2006). We, however, will only find a supplemental charge to be unduly coercive where it caused the jury to be "influenced by concerns irrelevant to their task" and "reach[] its subsequent verdict for reasons other than the evidence presented to it." United States v.

11

E. Med. Billing, Inc., 230 F.3d 600, 613 (3d Cir. 2000), citing Burley, 460 F.2d at 999.

The District Court did not abuse its discretion when it denied appellant's motion for a mistrial and, after the jury declared it was deadlocked on the interrogatory, instructed the jury "to return to the jury room to determine whether there is a minimum quantity of drugs upon which you can unanimously agree beyond a reasonable doubt." Such an instruction neither is coercive nor demands an answer. Further, the District Court explicitly noted that deadlock was an option, advising the jury, if it were unable to determine unanimously a minimum quantity of drugs, to "please respond that you are hopelessly deadlocked and we will address that situation."

Appellant argues that the District Court's instruction "in the face of the jury's third declaration of impasse" was as harmful as an affirmative declaration that deadlock was not an option. This argument is without merit. First, this case readily is distinguishable from the two cases cited by appellant finding that coercion exists where the trial courts substantially and explicitly pressure the jury to reach a verdict or fail to notify the jury that deadlock is an option. See Jenkins v. United States, 380 U.S. 445, 446 (1965) (finding coercive the trial judge' statement, "You have got to reach a decision in this case"); United States v. U.S. Gypsum Co., 550 F.2d 115, 133 (3d Cir. 1977) (Adams, J., concurring). Second, the record includes only one declaration of impasse from the jury. Though appellant counts three declarations, the first two of these merely were questions regarding the effect of an impasse on the interrogatory. Upon receiving one declaration

12

of impasse, the District Court did not abuse its discretion by asking the jury to return to the jury room and determine whether it could unanimously agree on a minimum quantity of drugs while explicitly advising the jury that deadlock was an option.

**V.**

For the foregoing reasons, we will affirm the judgment of the District Court.