# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 8, 2015

Plaintiff-Appellee,

v

No. 321890
Osceola Circuit Court
LC No. 13-004806-FH

JANET MARIE BROWN,

Defendant-Appellant.

Before: BOONSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(e)(*i*) (sexual penetration with a person who is at least 16 years of age but less than 18 years of age, who attends a public or nonpublic school, and the actor is a teacher in the school district), and fourth-degree criminal sexual conduct (CSC IV), MCL 750.520e(1)(f)(*i*) (actor engages in sexual contact with a person who is at least 16 years of age but less than 18 years of age, who attends a public or nonpublic school, and the actor is a teacher in the school district). The trial court sentenced defendant to concurrent prison terms of 36 months to 15 years for the CSC III conviction and eight to 24 months for the CSC IV conviction. Defendant appeals by right. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was a teacher at Ashmun School, located at a youth home, Eagle Village. The convictions arise from her engagement in sexual intercourse and sexual contact with the complainant, who at the time was a sixteen-year-old student in her class. The complainant testified that he and defendant engaged in repeated kissing, touching, and sexual intercourse in her classroom in 2012. Defendant admitted to kissing the complainant and allowing him to touch her genital area over her clothes, but denied having sexual intercourse with him.

Defendant was charged with three counts of CSC III and one count of CSC IV. On the last day of trial (Friday, March 21, 2014), proceedings began at 9:05 a.m., and defendant and the prosecution rested their cases around 6:00 p.m. A 20-minute break was taken, after which closing arguments and jury instructions were completed. Prior to beginning their deliberations, the trial court stated to the jury that "we might finish tonight, we might actually resume in the morning . . . ." The trial court also informed the jury that they could take breaks either to use the restroom or for "a smoke break and some fresh air." Additionally, the trial court informed the

-1-

jurors that despite the late hour they would be able to obtain necessary documentation verifying their jury service "to take back to work or whatever it is you might want to use it for." The jury exited the courtroom to order food for dinner and began deliberations at 8:31 p.m.

The trial court came back on the record at 12:26 a.m. the following morning (March 22, 2014) and the jury entered the courtroom at 12:28 a.m. to render its verdict. The jury found defendant guilty of one count of CSC III and one count of CSC IV, but not guilty of two other CSC III charges.

Although no objection appears in the trial court record, defense counsel stated at sentencing that at about 11:00 p.m. on the last day of trial, he had objected in chambers (with the prosecutor present) to the jury continuing its deliberations at that late hour. He further related that in chambers he had stated that

> [the jury] had been there since 8:30 or quarter-to 9:00 this morning. Everybody was obviously tired. I suggested that the lateness of the hour and the fact that they had been there for four, long, days was going to force them to reach a verdict just so they could go home.

Defense counsel further stated at sentencing:

> The Court indicated that he would allow them to continue to deliberate. The jury came back at about 12:(am) as I recall, with a very obvious compromised verdict; two not guilty, two guilty . . . . The very next week, Juror Number Eight, Mr. Cafretsas, called my office and said he was very upset; that he had not been able to sleep, that he was holding out for not guilty, that he was pressured by the other people; they wanted to go home. And, I indicated the only thing I could support was that he contact the Judge. I gave him your name and your address and, apparently, he did not.

Defendant raises only one issue on appeal. She argues that she was denied a fair trial because of the length of time the jurors were required to deliberate commencing in the evening of the last day of trial.

## II. STANDARD OF REVIEW

A trial court has wide discretion in the conduct of a trial. *People v Young*, 364 Mich 554, 558; 111 NW2d 870 (1961). "Ordinarily, the length of time a jury may be kept together for deliberation is a matter for the sound discretion of the trial judge. The time a jury may be compelled to deliberate is necessarily limited by the prohibition against forcing the jury to agree upon a verdict." *United States v Sielaff*, 561 F2d 691, 696 (CA 7, 1977), cert den 434 US 1076 (1978). When reviewing whether the trial court's instructions to a jury were coercive, this Court reviews the claim on a case-by-case basis, considering all the facts and circumstances, including the particular language used by the trial court. *People v Vettese*, 195 Mich App 235, 244; 489 NW2d 514 (1992).

III. ANALYSIS

Defendant argues that because the jurors did not begin deliberations until 8:30 p.m. on a Friday night, the verdict rendered four hours later was coerced because "the jurors had to believe that the Judge would not let them go home unless they came back with a verdict." We disagree.

At the outset, we note that we could find that defendant has abandoned this issue because she offers mere speculation, and has failed to provide any supporting authority for her argument. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) (stating that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give an issue only cursory treatment with little or no citation of supporting authority"); *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) (recognizing that "[a]n appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue").

Even considering defendant's argument, however, our review of the issue leads us to conclude that defendant's position is without merit. It is true that a trial court may not force a jury to keep deliberating to coerce a verdict. See *Jenkins v United States*, 380 US 445, 446; 85 S Ct 1059; 13 L Ed 2d 957 (1965) (holding that the trial court's statement, in response to the jury's note regarding its inability to reach a verdict, that "You have got to reach a decision in this case[,]" was coercive, and reversing the defendant's conviction and remanding for a new trial). And "[a] jury verdict may be coerced if the jury is required to deliberate until an unreasonable hour." *People v Cadle*, 204 Mich App 646, 657; 516 NW2d 520 (1994), rev'd on other grounds *People v Perry*, 460 Mich 55, 64; 594 NW2d 477 (1999).

In *Cadle*, 204 Mich App at 657, the defendants argued that the jury was coerced into reaching a verdict by being forced to deliberate until late into the night. The jury began to deliberate at 5:50 p.m., "a review of the situation [that] was to have been undertaken at 6:30 p.m." did not occur, and the jury reached its verdict at 9:40 p.m. This Court concluded that late-deliberations following a six-week trial were not grounds for reversal because they were not unreasonable, especially "given the lack of any further objection by counsel on the record." *Id*. at 658.

Considering all the facts and circumstances surrounding this case, *Vettese*, 195 Mich App at 244, we hold that the trial court did not abuse its discretion. As in *Cadle*, 204 Mich App at 658, there is no evidence on the record that the jury, at any time after beginning its deliberations, and notwithstanding that the trial court had specifically informed the jury that deliberations could resume the following day, requested that it be allowed to go home. The record instead suggests that the jury wanted to continue deliberating as long as possible rather than returning over the weekend. Although defense counsel stated at sentencing that a juror had later contacted him and stated that he was pressured by the other jurors because they wanted to go home, there is nothing on the record to support the assertion. While the jury was on duty for 12 hours before beginning deliberations, there is nothing in the record to suggest that the trial court instructed the jury that it could not leave until it reached a verdict, that the jury ever requested that the court adjourn for the night, or that the jury appeared exhausted. The jury was provided with food and breaks. The mere fact that the jury began its deliberations at a late hour and continued deliberating until a

verdict was reached is not in itself coercive; therefore, on the record before this Court we find no error warranting reversal.

Affirmed.

/s/ Mark T. Boonstra
/s/ William B. Murphy
/s/ Jane E. Markey